# EXHIBIT A

THE MARK LAW FIRM
Jamison M. Mark, Attorney (042392000)
675 Morris Avenue, Suite 102
Springfield, New Jersey 07081
(973) 845-6606
Attorney for Plaintiff Scott Nahama

| | |
|---|---|
| **SCOTT NAHAMA,**<br><br>Plaintiff,<br><br>v.<br><br>**ALTICE TECHNICAL SERVICES USA, AN** *operating division of* **CSC HOLDINGS, LLC; ALTICE USA, INC., ELIZABETH BROGAN, ABC CORPS. 1-3, and JOHN and JANE DOES 1-10** *(fictitious persons not yet known),*<br><br>Defendants. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY**<br><br><u>Civil Action</u><br>**COMPLAINT AND JURY DEMAND, DESIGNATION OF TRIAL COUNSEL, DEMAND FOR INSURANCE INFORMATION, DEMAND TO PRESERVE EVIDENCE, AND CERTIFICATION OF COUNSEL** |

Scott Nahama, by and through his attorneys THE MARK LAW FIRM, LLC, by way of Complaint against all Defendants does hereby state:

## **PARTIES**

1.      **SCOTT NAHAMA** is a resident of the Township of Garfield, Bergen County New Jersey and was at all times relevant an employee of Defendant **ALTICE TECHNICAL SERVICES USA** (hereinafter "Defendant" or "ATS"). Plaintiff **SCOTT NAHAMA** in his position as a Field Service Technician.

2.      **ALTICE TECHNICAL SERVICES USA,**   *an operating division of* **CSC HOLDINGS, LLC** *(hereinafter "ATS" or "The Company")* and its members have a principal place of business located at 198 Grumman Rd. Bethpage, New York 11714, Plaintiff's employer at all times herein, has a business location in 184 Essex Street, Lodi New Jersey, which is where

Plaintiff's local report office was located, and of course Altice does business in and throughout Bergen County. State of New Jersey.

3.     **ALTICE USA, INC.** is a communications and media company located at 1 Court Square West, Long Island City, New York, 11101, was Elizabeth Brogan's employer, and controlled ATS as its Parent Company.

4.     **ELIZABETH BROGAN,** at all relevant times during the course of Mr. Nahama's employment, was A Manager of Human Resources for Altice USA, Inc. that made the decision, or influenced same to terminate Mr. Nahama's employment, and was an employee at **ALTICE.** It is believed Ms. Brogan is a citizen of East Windsor, New Jersey.

5.     **ABC CORPS. 1-3** are entities who are unknown but had authority, control and/or engaged in conduct to discriminate directly or indirectly against Mr. Nahama due to his disability in furtherance of the allegation set forth below.

6.     **JOHN DOES 1-10** are individual persons who are unknown but had authority, control and/or engaged in conduct to discriminate directly or indirectly against Mr. Nahama due to his disability in furtherance of the allegation set forth below.

## VENUE

7.     The matter is properly venued in Bergen County, Superior Court Law Division pursuant to Rule 4:3-2(a), because the Plaintiff was employed in Bergen County and the cause of action arose in the Borough of Lodi, Bergen County.

## FACTS

8.     In or about 2007, Mr. Nahama began working at Altice as a Field Service Technician.

9.      Mr. Nahama worked 40 plus hours per week, on a per-service fee arrangement, and performed many services for Altice in his capacity as a Broadband Technician III.  Mr. Nahama received "high" customer service ratings.

10.     In June 2015 was involved in an auto accident. As a result of the accident, per company policy Mr. Nahama was required to undergo a drug test.

11.     Mr. Nahama's drug test result came back and showed THC.

12.     As a result of the CBD and THD in his system, Mr. Nahama was suspended, but was not terminated.

13.     Altice Human Resource manager Theresa Negrin contacted Mr. Nahama to explain that Mr. Nahama had failed his test, and would be enrolled into the Fresh start program.

14.     During this time, Mr. Nahama was consuming Hemp and CBD supplements for his condition, and therefore appealed The Fresh Start program which required Mr. Nahama to enter into an outpatient Rehab for 6 months.

15.     Mr. Nahama had written an email to James Dolan.  After same, Mr. Nahama was contacted by Human Resources who requested Mr. Nahama to bring in his supplements and they would contact him after their review.

16.     As a result, Mr. Dolan overturned the decision to place Mr. Nahama in the Fresh Start program and asked Mr. Nahama to stop taking the supplements and retest in 3 weeks.  Mr. Namaha retested and went back to work.

17.     Mr. Nahama's test results came back and he passed, and was reinstated in his employment.

18.     July 31, 2017 Mr. Namaha was injured at work when he was installing lines at a residential home, resulting in a herniated disc in his neck.

3

19.     Mr. Nahama took medical leave, and received workers compensation medical treatment. Mr. Nahama remained out on leave, having neck surgery on January 30, 2018.

20.     During this time and throughout treatment, Mr. Nahama kept in touch with the Company's Workers Compensation case manager Reggie, and Kristen Miles of ESIS.

21.     After his surgery, Mr. Nahama was placed on Percocet for pain.   Unfortunately, Mr. Nahama had an adverse reaction to Percocet, and looked into an alternative, which was Medical Marijuana.

22.     In or about April 2018 Mr. Nahama applied for the right to use medical marijuana due to his Chronic Pain in compliance with NJCUMMA.

23.     On May 24, 2018 was granted a medicinal marijuana identification card from the New Jersey Department of Health, pursuant to the New Jersey Compassionate Use Medical Marijuana Act ("NJCUMMA") Medicinal Marijuana Program.

24.     Medical Marijuana is a legal Schedule I narcotic permitted by the State of New Jersey pursuant to NJCUMMA.

25.     In or about late May or early June 2018 Mr. Nahama returned to work from medical leave.

26.     Mr. Nahama continued to work without incident, but started with light duty, and updating his training as a Field Service Tech.

27.     In fact, the issue of Mr. Nahama's medical marijuana use was never an issue while he was working, and he never worked under the influence or with any impairment, and there was no suspicion of working under the influence, or with any impairment.

4

28.     Due to his inability to afford medical marijuana, it was difficult for Mr. Nahama to purchase Marijuana for medical purposes from a Harmony dispensary, and he was able to purchase enough for one treatment.

29.     Mr. Nahama last used less than a .5 of gram dose of medical marijuana, by putting the flower and leaves into a vaporizer and inhaled the medical marijuana.

30.     Prior to the accident, Mr. Nahama had last consumed his medical marijuana on May 12, 2019 in a manner as described above.

31.     On May 21, 2019, Mr. Nahama was involved in a minor accident when his vehicle struck a parked vehicle as he was backing out of a driveway while attempting to park the service truck.

32.     The minor accident only involved property damage.  There were no personal injuries, but Mr. Nahama contacted acting-supervisor Carlos Michel.  Mr. Michel advised Mr. Nahama to contact the Passaic Police, which he did, and the officers responded to the scene.

33.     Upon investigation, the Passaic Officers on the scene did not suspect Mr. Nahama being under the influence and the officers did not require Mr. Namaha to be tested for drugs, and identified same in the police report.

34.     Additionally, shortly thereafter, Mr. Michel arrived at the scene and made no comment, or adduced any suspicious, that Mr. Nahama was under the influence of any drugs or alcohol, but was on the scene as a mere technicality because of the incident.

35.     After they drove back to the Lodi Station, Mr. Michel prepared an incident report, and contacted Human Resources and advised that Mr. Nahama had been in an incident with the Bucket Truck and clipped a park car.  Mr. Michel was then told by Human Resources that Mr. Nahama was required to go for Drug and Alcohol Screen at MedExpress in Hackensack.

5

36.     Mr. Nahama complies with ATS's request, and went to MedExpress and took the drug test.

37.     Mr. Nahama was then placed on suspended, paid leave.

38.     While home, a few days later, Mr. Nahama called into ATS to speak to Elizabeth Brogan, Altice Human Resources, to discuss if the company had made any decisions or if there were any updates on his employment.  Ms. Brogan told Mr. Nahama there was no determination as of that time.

39.     On May 29, 2019 Dr. Steven Kracht called Mr. Nahama and told him that there were traces of marijuana in his system.  Mr. Nahama replied that it was weird because he hadn't used medical marijuana for a few weeks, and he has a medical marijuana card from his doctor.

40.     In response, Dr. Kracht advised that because in his state he is protected under law, and he will share this information in his report to that his employer will be aware and can deal with it.  Dr. Kracht also confirmed the conversation was being recorded to provide proof of these facts.

41.     That same day, Mr. Nahama called Defendant Brogan to determine if there was any decision on his employment.   Defendant Brogan advised Mr. Nahama that she was aware of the drug test results, and claimed that Mr. Nahama "failed."

42.     During their conversation, Mr. Nahama disclosed to her that he possessed a card for Medica Marijuana use, yet Defendant Brogan falsely told Mr. Nahama that she spoke to the doctor and she did not know that Mr. Nahama had a medical marijuana card.

43.     Defendant Brogan then stated to Mr. Nahama that there was a company policy, and that the policy does not allow Mr. Nahama to work *under the influence*."

44.     Mr. Nahama objected, stating that he was not "under the influence" and that there was no such evidence of working under the influence or any way working impaired.

6

45.     Mr. Nahama asked Defendant Brogan whether she considered the fact that he had a medical marijuana card which legally permitted his use, would explain the test results, and that medical marijuana was known to stay in his system for an extended period of time.

46.     ATS never provided to Mr. Nahama the test results and what the results showed, and never asked Mr. Nahama to come into ATS to discuss the fact that he was an employee with a debilitating medical condition due to Chronic pain. ATS and Ms. Brogan never asked why Mr. Nahama had the card. There was no attempt to engage Mr. Nahama in the interactive process legally required for a disabled employee requiring an accommodation.

47.     Mr. Nahama did not require the use of medical marijuana in the workplace, but to be allowed to take his prescription medical marijuana t home, aware from the job, to help release chronic pain to live pain free.

48.     Defendant Brogan never provided a copy of the alleged policy that represented what she said to him, and that he was not allowed to work "under the influence" or what the conditions of such policy might be.

49.     During their call, contrary to the doctor's representations that he had placed in the drug test report that Mr. Nahama had a NJCUMMA Card, Defendants Brogan stated to Mr. Nahama that she was not made aware of the existence of the medical marijuana card.

50.     Mr. Nahama only need an accommodation to be free from pain while working, and advised that he only used the marijuana off work hours, and at home. He advised that he never worked "under the influence."

51.     Nonetheless, at that point, Mr. Nahama had not been terminated, and yet Defendants Brogan was made aware of Mr. Nahama's medical marijuana card, and the fact that he had a debilitating health condition.

52.     After his call with Defendant Brogan, Mr. Nahama called Dr. Kracht to confirm that Dr. Kracht, in fact, did place in the report that Mr. Nahama had a medical marijuana card for the State of New Jersey.

53.     Dr. Kracht responded to Mr. Nahama that he did, in fact, write same in his report, and even read the report to Mr. Nahama: "*Has a medical marijuana card for his state*."

54.     Dr. Kracht's report is the report Defendant Brogan relied upon during her review of Mr. Nahama's testing and determination to terminate his employment.

55.     As such Defendant Brogan falsely reported, or failed to read the report test results, when she represented that she did not know that Mr. Nahama possessed a valid NJCUMMA patient card.

56.     During his conversation with Dr. Kracht, Mr. Nahama again confirmed the "levels" of the THC, and asked if the levels relate to any determination that Mr. Nahama was under the influence of any drugs during the time of the incident.

57.     Dr. Kracht responded and stated to Mr. Nahama that it was impossible for anyone to determine from a urine test if a positive cannabis test result meant that the person was under the influence when tested.

58.     On June 3, 2019 Mr. Nahama called back and spoke to Defendant Brogan and advised of the information he had learned from Dr. Kracht regarding the information Dr. Kracht had placed in his report identifying that Mr. Nahama possessed a medical marijuana card for his state.  Mr. Nahama also told Defendant Brogan that Dr. Kracht said that his employers could not tell if he was "under the influence" at the time of the drug screening.

59.     Defendant Brogan replied that she had to talk to the "legal team," and would advise what "they will do."

8

60.     Mr. Nahama had not been terminated at this point, and yet prior to the company, and Defendant Brogan, had been made aware of Mr. Nahama's NJCUMMA card, his debilitating health condition, and need to consume medical marijuana for pain.

61.     On June 4, 2019, Defendant Brogan called Mr. Nahama and asked him to come into ATS to meet with her and Carlos Michel.

62.     During their call, Defendant Brogan, again, contrary to the earlier conversations just the day before, claimed to have no knowledge that Mr. Nahama had a card for the legal use to ingest marijuana for medical purposes. Defendant Brogan's comments were again was false.

63.     Mr. Nahama reported to work and brought in his medical records, and his Medical Marijuana card. Mr. Michel was also present during this meeting with Defendant Brogan and Mr. Nahama.

64.     Defendant Brogan advised Mr. Nahama that he was being terminated due to violation of the "*substance abuse policy*," because he had marijuana in his system and he violated the policy by working "*under the influence.*"

65.     Defendant Brogan then stated that Mr. Nahama's drug test report said nothing about him having a prescription for medical marijuana or that he had a state Medical Marijuana card and that she had spoken to the doctor to confirm this.  Again, this was false.

66.     Even upon claiming that she was just learning of same, Defendants Brogan failed to take Ms. Nahama's condition into consideration.

67.     Prior to and during their meeting, Mr. Nahama had repeatedly advised that he had a card, need the mediation or pain management, and was only consuming the marijuana off hours, to accommodation to his condition.

9

68.     Mr. Nahama made it very clear that the Marijuana was consumed outside of the workplace so that he was able to continue to work with reduced pain.

69.     Mr. Nahama even advised that he would consider alternative means to treat his condition.  Defendant Brogan did not consider Mr. Nahama's condition and Mr. Nahama's termination was final.

70.     During the termination meeting, Mr. Nahama gave Ms. Brogan the option that to keep his job, and expressed to her he would look for other forms of treatment if it would save his job.  Mr. Nahama even offered to sign up for the Fresh Start Program.  Ms. Brogan advised that the company policy had changed when ATS purchased Cablevision, and there was no Fresh Start Program any longer.

71.     Mr. Nahama was unlawfully terminated on June 4, 2019.

72.     After their meeting, Mr. Nahama called Dr. Kracht who confirmed that no one from ATS had called him to talk about the test results.

73.     As a part of Mr. Nahama's medical treatment, and for pain management, he was prescribed medicinal marijuana pursuant to the New Jersey Compassionate Use of Medical Marijuana Act, N.J.S.A. 24:61-1.

74.     Altice and its upper-management were aware of Mr. Nahama's disability, CUMA Medical Card, and need for use of Marijuana for medical purposes, i.e., pain management, outside the workplace, yet failed to engage Plaintiff Nahama in any form of discussions to determine how Altice could provide a reasonable accommodation due to his disability.

75.     Mr. Nahama only uses the prescription on weekends, never at work, for medical purposes to help him sleep and ease his back pain.

## COUNT I

### AS TO ALL DEFENDANTS

*(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.*
*- Disability)*

76.     Plaintiff repeats and realleges paragraphs 1 through 72 of this Complaint as if fully set forth herein.

77.     Plaintiff was disabled as defined in the New Jersey Law Against Discrimination N.J.S.A. 10:5-1 et seq.

78.     Defendants treated Plaintiff in a discriminatory manner due to Plaintiff's disability and prescribed medical treatment.

79.     Defendants terminated Plaintiff due to his disability and off work use of prescribed medical treatment, and purported pretextual reason that Plaintiff was working "under the influence" of medical marijuana.

80.     Defendants were aware of Plaintiff's disability, medical marijuana card, and need for an accommodation due to his pain.

81.     Defendants were aware of the above prior to making the determination to force Plaintiff to undergo and drug test, and even then, failed to engage Plaintiff in any discussions about how to accommodate Plaintiff's use of Medical Marijuana outside the workplace.

82.     Due to his disability, Plaintiff was treated illegally compared to those without a disability, and were consuming medicinal marijuana without criminal prosecution, pursuant to NJCUMMA.

83.     In fact, any such work-place policy that automatically terminates, without exception, an employee with a valid NJCUMMA Card and who consumes medicinal marijuana

11

not in the workplace, and is fully compliant with NJCUMMA, is a violation of the NJ Law Against Discrimination.

84.     Defendants' given reason for terminating Plaintiff was based upon an "under the influence" standard within its policy for those involved in auto accidents, but without consideration to Plaintiff's NJCUMMA card.

85.     Although the Defendants knew or should have known of the discrimination suffered, Defendants failed to take any corrective measures to stop or prevent the discrimination or such a discriminatory policy which clearly fails to take into account Plaintiff's Card to consume medicinal Marijuana without criminal prosecution, and therefore violates of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

86.     Defendants failed to engage Plaintiff in the interactive process to determine the extent of Plaintiff's disability, the manner and method of his treatment and need for a work-place accommodation, and any limitations or hardships presented to the company due to same.

87.     These illegal actions were committed against Plaintiff and the conduct complained of would not have occurred but for Plaintiff's disability.  Defendants have engaged in behavior that violates the New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, et seq., and have thereby irreparably injured Plaintiff.


## COUNT II

*(New Jersey Law Against Discrimination, N.J.S.A. 10:15-12 et seq. –*
*Failure to Accommodate)*

88.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 87 of this Complaint as if fully set forth herein.

89.     Plaintiff suffered from a disability which limited his ability to leave a pain free life, and required the consumption of Medicinal Marijuana opposed to continued use of opioids.

90.     Defendants were aware of Plaintiff's disability, and his medical marijuana card, granted pursuant to NJCUMMA.

91.     Defendant Human Resources manager Elizabeth Brogan communicated with Plaintiff when Plaintiff advise her of his disability, his need for continued care and/or treatment, but Defendant Brogan failed to engage Plaintiff in any interactive process to determine if an accommodation could be had.

92.     Plaintiff had his card for over a year prior to his termination, and had consumed marijuana off-work-hours, and never had any issues while working, as such an accommodation would have been reasonable.

93.     Plaintiff requested that he be able to continue to use his marijuana for medical purposes, he only consumed same outside of work, and he never was under the influence while in the workplace (or on the job).

94.     Despite the company being aware of same, Defendants failed to address Plaintiff's disability, did not engage Plaintiff about an accommodation, and instead Plaintiff was immediately terminated due to the Company's unwillingness to provide, or even discuss, a very reasonable accommodation of Plaintiff's disability.

95.     Defendants were aware of Plaintiff's need for an accommodation to allow him to continue use of the Medical Marijuana to treat his debilitating medical condition.

96.     Defendants were aware that Plaintiff possessed a valid card in compliance with NJCUMMA.

13

97.     The company had available to Mr. Nahama various forms to which it could reasonable accommodate that would not create a hardship to its operations.

98.     Defendants were aware that the prescribed medication – medical marijuana -- did not affect Plaintiff's ability to perform his job as Defendants allowed Plaintiff to continue employment over a year prior to his termination.

99.     Additionally, prior to his termination, it was discussed between Plaintiff and Defendant Brogan that Plaintiff suffered from a disability, treated that disability with Medical Marijuana, treated his disability off-work hours by consuming medical marijuana, he was never working under the influence, and that he needed to use medical marijuana very sporadically due to pain.

100.    The ability to accommodate Plaintiff to allow him to continue Medical Marijuana use would not have created a hardship upon the Defendant employer.

101.    Despite his request for an accommodation, Defendant Company terminated plaintiff in violation of the New Jersey Law Against Discrimination.

102.    Defendants conduct violated the NJ Law Against Discrimination when it failed to engage its employee in the interactive process, when it failed to accommodate Plaintiff, and when it terminated him due to his disability.

## COUNT III

### (New Jersey Law Against Discrimination, N.J.S.A. 10:15-12 et seq. – Perceived Disability Discrimination

103.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.    Defendants, under belief, treated Plaintiff in a discriminatory manner due to a perception that Plaintiff suffered from a disability.

105.    Due to Defendants' belief of disability, Plaintiff suffered and was terminated from his employment.

106.    It was discussed between Plaintiff and defendants that due to his disability, he would be required to undergo pain management and needed relief from pain by taking certain drugs prescribed to him from his doctor.

107.    Defendants incorrectly believed that Plaintiff's use of Medical Marijuana was illegal, and terminated his employment as it perceived continued use was illegal and not a legal form of medical accommodation.

108.    Plaintiff made it clear that he would need to undertake pain management efforts due to his injury and illness by continued use of Medical Marijuana.

109.    All pain management was handled outside of the workplace, yet the Defendant employer perceived Plaintiff's condition and/or treatment to be a violation of company policy, which it was not.

110.    The Company also incorrectly perceived Plaintiff's Medical Condition and form of treatment effected his ability to perform his job responsibilities.

111.    The Company also incorrectly perceived that due to the form of treatment, medical marijuana, being used by Plaintiff, he was not able to continue to perform his job responsibilities.

112.    Plaintiff's termination, an adverse act, was committed by the Defendant company's upper management, and/or supervisors due to the incorrect belief of perceived disability.

113.    Defendants' termination of Plaintiff's employment would not have occurred but for the Defendants' perception of Plaintiff's disability, and form of treatment.

## COUNT IV

### *(New Jersey Law Against Discrimination, N.J.S.A. 10:15-12 et seq.*
### *Retaliation - Suspension/Wrongful Termination)*

114.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 113 above and incorporates them as if fully set forth herein.

115.     Due to Plaintiff's disability, including the form of medical treatment used by Plaintiff to recover and rehabilitate his disability and debilitating medical condition, Defendants terminated Plaintiff.

116.     Due to Defendants' discriminatory intent of Plaintiff's disability, his medical treatment, and his legal use of Medical Marijuana, Plaintiff was terminated from his employment.

117.     Plaintiff objected to the Company's illegal adverse treatment when it suspending and ultimately terminating him in response to Plaintiff complaint and objection to the Company's discriminatory and unlawful treatment of his medical condition, the form of treatment, and Plaintiff's legal use of Medical Marijuana in compliance with NJCUMMA.

118.     Despite Plaintiff's objection, and because of the objections, Plaintiff was terminated as a result of the collective effort of Defendants' Legal department, Upper Management and Human Resources Department, and/or supervisors.

119.     Plaintiff's termination of employment would not have occurred but for the Defendants' discrimination of his disability, or perception of Plaintiff's disability and treatment for same being an impairment to his job performance and/or responsibilities.

120.     Defendants' termination of Plaintiff's employment on June 4, 2019 would not have occurred but for the Defendants' perception of Plaintiff's disability and form of disability treatment and recovery, i.e., medical marijuana.

16

## COUNT V

### *(New Jersey Law Against Discrimination, N.J.S.A. 10:15-12 et seq. – Aiding and Abetting)*

121.    Plaintiff repeats and reasserts all allegations above as if fully set forth in paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122.    Defendants, including John and Jane Does 1-10, wrongfully aided and abetted Defendant co-employees' unlawful, discriminatory treatment and wrongful termination of Plaintiff, in violation of the New Jersey Law Against Discrimination N.J.S.A. 10:5-1, et seq. and for all causes of action and actions herein.

123.    Defendants' co-employees' conduct had the tacit approval of Defendants' upper-management.

124.    Because of the collective acts of each Defendant, and due to their plan, scheme and motivation to terminate and treat Plaintiff in an unlawfully discriminatory manner, Defendant Management, including Brogan and unknown members of Human Resources, wrongfully aided and abetted John Does 1-10 management, supervisors, administration, and co-employees.

125.    As a result of all Defendants unlawful conduct, Plaintiff suffered emotional distress, anxiety, and humiliation and embarrassment.

126.    As a concerted effort, Defendants, upper management and the company employees conspired to discrimination, retaliate/terminate Plaintiff.


**WHEREFORE,** Plaintiff demands judgment against all Defendant, Compensatory Damages for loss of pension, health insurance and other benefits, wages and rights, including back pay and front pay, for the violation of rights, for emotional distress, for pain and suffering; Punitive

Damages; Pre-and-Post Judgment Interest; and Attorney's Fees and Costs; and Other Equitable

Relief.

RESPECTFULLY SUBMITTED,

**THE MARK LAW FIRM, LLC**
Attorney for Plaintiff, Scott Nahama

Dated: May 8, 2020 _____